Van Voorhis, J.
The appeal is by a third party in a supplementary proceeding (Psaty & Fuhrman, Inc.) from ail affirmance of a civil contempt adjudication. A subpoena had been served on Psaty by the judgment creditor under section 781 of the Civil Practice Act containing a clause forbidding Psaty “ to make or suffer any transfer or other disposition of, or to interfere with, any property belonging to the judgment debtor, or to which he may be entitled or which may thereafter be acquired by or become due to said judgment debtor, or to pay over or otherwise dispose of any moneys due or to become due to such judgment debtor, not exempt by law from application to the satisfaction of the judgment, until the further order of the court ’ ’.
Psaty was the general contractor in the construction of an incinerator for the City of New York. The judgment debtor, Monarch Concrete Corporation, was a subcontractor. It has been found that Psaty paid money to Monarch in violation of the injunction clause in the subpoena, in consequence whereof Psaty has been fined $4,083.69 and interest with which to pay the indebtedness of the judgment debtor to the judgment creditor.
In lieu of an appearance at Special Term, Part II, Psaty submitted an affidavit, verified June 27, 1956, stating that the judgment debtor had been overpaid on its subcontract, and that there was nothing .owing to the judgment debtor .when the *387 additional payments were made which have been held to constitute a violation of the injunctive clause in the third-party subpoena. This affidavit was accepted in lieu of testimony in the summary proceeding nor has its accuracy been questioned.
"What gave rise to this controversy is that in January, 1956 Monarch (the judgment debtor) declared that it could not fulfill its obligations under its subcontract with Psaty. By the date of service of the third-party subpoena, all of the contract price and extras had been paid without the retention of any reserve percentage, and a considerable sum in addition. Although nothing was owing from Psaty to Monarch, Psaty continued paying money to Monarch after it had been served with this subpoena. It is these latter payments which have been held to subject Psaty to penalties for contempt of court.
The reason for the overpayments by Psaty was that it had to finish the work which it had contracted to perform under its contract with the City of New York (part of which had been sublet to Monarch) and, rather than to discharge Monarch and finish the job itself or engage another subcontractor to complete the work, it elected to subsidize Monarch to do so itself. It does not matter whether these funds advanced to Monarch by Psaty to pay laborers, materialmen, insurance and other necessary expenses became trust funds, or were loans or gifts. In no event did they represent “ property belonging to the judgment-debtor ’ ’ nor indebtedness, which was all that the subpoena enjoined Psaty from paying or transferring to Monarch.
Psaty derived an advantage from this course of conduct, but that did not transform the money paid to Monarch into payment of indebtedness to Monarch or into property of Monarch in Psaty’s hands. The Appellate Division stated that “It is a reasonable inference that the course undertaken by Psaty was to its advantage as compared with the other means available to it ”, but that did not render Psaty guilty of contempt. The advantage was to enable Psaty to complete its general contract with the city so as to collect the balance of its contract price from the city. The circumstance that Psaty had to complete its contract on account of Monarch’s default, and took this means of doing so, did not mean that it was indebted to Monarch. The indebtedness was overwhelmingly the other way. If Psaty *388 had severed its relations with Monarch, it could have taken judgment against Monarch for nearly $100,000 plus whatever additional extra cost it would have been obliged to incur in order to complete the work which Monarch had subcontracted but neglected to perform.
It has been held that on proof that these payments were made to or for Monarch’s account, the burden was cast on Psaty to establish that they were not funds due or to become due to Monarch. The difficulty in adhering to that ruling is, in the first place, that there is no presumption that these moneys belonged to Monarch or that Psaty committed a contempt. It was incumbent on the judgment creditor to establish through examination in the supplementary proceeding not only that these funds were paid to Monarch, but also that they were its property or were transferred in payment of an indebtedness so as to constitute a violation of the injunctive clause in the subpoena. Moreover, if there were any burden on Psaty, it was sustained by the filing of the affidavit of its secretary (accepted in lieu of testimony) showing that Monarch had already been overpaid. Even so, the situation might have been different if under a new arrangement with Monarch it were to have derived a profit for the completion of this work, but Monarch was not completing the job for a profit. By receiving these moneys from Psaty, which were not enough even to meet the unemployment and social security and wage obligations of Monarch, Monarch made no profit but was induced to continue so as to avoid the heavy judgment which would have been entered against it if Psaty had been obliged to complete the subcontracted work itself or through some other subcontractor. In that event there would have, been less for other creditors of Monarch. Instead of depleting Monarch’s assets available for creditors, Psaty was reducing Monarch’s liabilities. Under these circumstances, there was no violation of the subpcena, as matter of law, inasmuch as no property belonging to the judgment debtor was transferred to it, nor was any indebtedness paid to the judgment debtor.
The order appealed from should be reversed insofar as it adjudicates appellant in contempt of the third-party subpcena, the fine remitted and the motion to punish the appellant for contempt denied, with costs in all courts.